SPEAR BOX CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

No. 199, Docket 21555.

United States Court of Appeals Second Circuit.

Argued May 9, 1950.

Decided June 7, 1950.

Meyer Bernstein, New York City for petitioner.

Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, Robert N. Anderson, Morton K. Rothschild, Special Assistants to Attorney General, C. Oliphant, Washington, D. C., for respondent.

Before SWAN, AUGUSTUS N. HAND and CHASE, Circuit Judges.

CHASE, Circuit Judge.

This case primarily involves the question whether, on the one hand, the petitioner realized income from, or, on the other, received a gift by virtue of, the retirement of its bonds at a cost to it of less than their face value. The facts are fully set forth in the opinion of the Tax Court, 13 T.C. 238, but a brief statement of the more pertinent ones may, perhaps, be helpful.

Petitioner, a New York corporation, was organized in 1939 pursuant to a plant of reorganization of petitioner's predecessor, the G. & S. Holding Co., Inc., which held all the capital stock of Spear Box Co., Inc., and Spear Paper & Twine Co., Inc., both Delaware corporations. As a result of the reorganization, the latter two companies were dissolved and their assets acquired by the G. & S. Holding Co., which in turn transferred them, as well as its other assets, to petitioner in exchange for all of petitioner's outstanding capital stock and its 1951, 4½ Sinking Fund Debenture Bonds, of a face value of $50,000. Gair Company, a paper board and paper products manufacturer, which had sold supplies in quantity to the dissolved companies, owned 50% of the preferred and all of the Class A common stock of the G. & S. Holding Co. Pursuant to the plan of reorganization, Gair Company surrendered all its stock in the G. & S. Holding Co. in exchange for the petitioner's Debenture Bonds having a face value of $50,000. Gair Company had also held $150,000 worth of promissory notes of the Spear Box Co. of Delaware, which were assumed by petitioner as a result of the organization. These notes were received by petitioner in exchange for its Sinking Fund Debenture Bonds in the face amount of $125,000; $10,500 in cash; and all its right, title and interest in a certain machine. Thus, all told, Gair Company received under the plan of reorganization petitioner's Sinking Fund Debenture Bonds (hereinafter called "debentures") having an aggregate face value of $175,000. By February 28, 1942, petitioner had retired $26,500 of these, under their sinking fund provisions, leaving $148,500 of them outstanding and held by Gair Company.

Gair Company had in 1932 issued and sold to the public some 40 year 6% Income Notes. On January 1, 1942, there were outstanding such notes of the face value of $5,058,100. These were traded in the over-the-counter market in New York and their price range from 1938 to 1942 was low, 30, in 1939 and high 72½ in 1940.

846

During 1942, their price ranged from low, 55 to high 71½. On April 23, 1942, they were quoted at 59, i. e., $590 for each $1,000 of face value. It was on that day that, after due negotiations, petitioner and Gair Company made the agreement out of which this tax controversy arose. Gair Company agreed to accept from petitioner Gair Company's notes, at their face value, in exchange for a like principal amount of petitioner's debentures. Petitioner thereupon went into the market and purchased from time to time up to December 28, 1942 for a total cash outlay of $60,490, Gair Company's notes having a face value of $89,750. Pursuant to the agreement of April 23, 1942, these in turn were exchanged for petitioner's debentures having a like face value, so that, in effect, petitioner was enabled to retire $89,750 worth of its debentures for $60,490 in cash.

During this period, however, the price of the Gair Company's notes was gradually rising—it was 59 on April 18, 1942 and 69 on December 24, 1942—so that it became impracticable to buy any more of them in the open market. Further negotiations were had. On December 22, 1942, Gair Company agreed to accept $41,125 in cash in exchange for the remaining $58,750, face value, of petitioner's debentures held by it; and on December 29, 1942, petitioner paid the $41,125 in cash for those debentures. Thus, petitioner succeeded between April 23 and December 29, 1942, in retiring debentures having a face value of $148,500 for a total cash outlay of $101,615. The Tax Court held that the difference ($46,885) was taxable in 1942 as income attributable to a discharge of indebtedness. I. R. C. § 22(a); Treas. Reg. 111, § 29.22 (a)–17. Petitioner argues that the difference was a gift from Gair Company to it and so not taxable under I. R. C. § 22(b) (3) and Treas. Reg. 111, § 29.22(b) (3).

While Commissioner v. Jacobson, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477, 7 A.L.R.2d 857, did not expressly overrule Helvering v. American Dental Co., 318 U. S. 322, 63 S.Ct. 577, 87 L.Ed. 785, it did establish, as the test of taxability, whether the creditor "intended to transfer or did transfer something for nothing" to the debtor. 336 U.S. at page 50, 69 S.Ct. at page 369. It held that in the absence of proof to the contrary, the creditor's intent "may be assumed to have been to get all, he could for his entire claim." Ibid. It added that the question in each case is "whether the transaction is in fact a transfer of something for the best price available or is a transfer or release of only a part of a claim for cash and of the balance 'for nothing.'" 336 U.S. at page 51, 69 S. Ct. at page 370. Judged by this test the Tax Court was, we think, clearly right at least as to that part of the saving to petitioner which resulted from the exchange of Gair Company's notes for petitioner's debentures. According to a Gair Company vice-president, Gair Company "considered it an even trade." True, there is evidence to the effect that Gair Company had been buying its notes itself and that it agreed to stay out of the market for them while petitioner was in it, so as not to drive up their price. But there is nothing to show that Gair Company had the cash to purchase more of its notes during the period from April 23 to December 28, 1942. Nor is there anything to show that Gair Company would not have received a taxable gain had it purchased them. Moreover, its notes bore interest at 6%, while it received only 4½% interest on petitioner's debentures. In short, here, as in Commissioner v. Jacobson, supra, there is nothing to indicate that the creditor "intended to transfer or did transfer something for nothing."

It can more plausibly be argued, however, that so much of the saving to petitioner as resulted from its payment of $41,125 cash for its debentures having a face value of $58,750, was a gift to it, within Helvering v. American Dental Co., supra. Gair Company did this "as kind of a present" to petitioner, according to the testimony of petitioner's president. Because petitioner and its predecessor had always been a large customer of Gair Company, relations between them had always been "a family affair," according to a Gair Company vice-president. Yet the Tax Court could well believe that better business was the end sought, for by improving petitioner's financial statement, and thus its credit

standing, Gair Company was placing it in a position to buy more of the Gair Company's products. In any event, none of the parties below, or here, distinguished between the exchanges, and the Tax Court found that "Both transactions were a part of the same plan." We accept that.

■ Petitioner insists, however, that the actual value underlying its debentures, and not their face value, should be used to measure its gain. It points to a good-will item of $50,000 which had been arbitrarily placed, as well as to some capital assets which had been arbitrarily revaluated upwards, upon its books, and argues that the debentures were issued against them. The regulations provide, however, that issuing price or face value is determinative. Treas. Reg. 111, § 29.22(a)–17. This is as it should be, for the debtor *owes* the face amount of his debt. Moreover, any actual-value test would be impractical to administer: all of the problems involved in evaluating a going concern, and these are not few, would arise.

■ Finally, petitioner claims that pursuant to I. R. C. § 22(b) (9) and Treas. Reg. 111, § 29.22(b) (9), it consented to reduction of the basis of its property under the pertinent regulations and as a result the amount of income arising from the retirement of its debentures was not includible in its income for taxation. While petitioner filed the proper printed Form, No. 982, for such consent, it typed in before the word "consents," the words "does not," adding at the bottom of the Form, "Taxpayer requests that the above exclusions be treated as a credit to the good will account." Treasury Regulation 111, § 29.113 (b) (3)–1, however, sets forth the general rule for determining the property whose basis shall be adjusted. Section 29.113(b) (3)–2 provides that if no agreement is reached between the Commissioner and the taxpayer as to variations from the general rule, the consent filed on Form 982 "shall be deemed to be a consent to the application of such general rule * * * unless the taxpayer specifically states on such form that it does not consent to the application of the general rule." Thus, petitioner did not consent to the application of

the general rule, and as its offer to vary that rule was not accepted by the Commissioner there was neither consent to a reduced basis under the general rule nor agreement upon anything in place of it.

Affirmed.