Eleanor A. BRADFORD, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 12550.

United States Court of Appeals
Sixth Circuit.

May 22, 1956.

William Waller, Nashville, Tenn., (Lawrence Dortch, Waller, Davis & Lansden, Nashville, Tenn., on the brief), for petitioner.

Karl Schmeidler, Washington, D. C. (H. Brian Holland, Ellis N. Slack, Washington, D. C., on the brief), for respondent.

Before MARTIN, MILLER and STEWART, Circuit Judges.

STEWART, Circuit Judge.

The question here is whether the petitioner realized $50,000 income in 1946 when her liability upon a note for $100,-000 was discharged for $50,000.

■ In 1938 the petitioner's husband owed a Nashville bank approximately $305,000. The debt had grown out of investment banking ventures he had engaged in prior to the depression. He had pledged most of his assets to the bank as collateral, but the greater part of the indebtedness was unsecured. The brokerage firm of which he was a member held a seat on the New York Stock Exchange. In October of 1938 the Exchange adopted a rule requiring each general partner of a member firm to submit a detailed report of his indebtedness. Fearing that disclosure of so much indebtedness might impair the position of his firm with the Exchange, he persuaded the bank to substitute the note of his wife, the petitioner, for a portion of his indebtedness. Accordingly, the petitioner executed her note to the bank for $205,000 without receiving any consideration in return.[1] Her husband remained the obligor on two notes to the bank for $100,000 and so reported to the New York Stock Exchange.

About two years later the petitioner at the bank's request executed two notes to replace her $205,000 note, one for $105,000, on which all the collateral was pledged, and another for $100,000 which was unsecured. In 1943 a bank examiner required the bank to write off $50,000 of the petitioner's $100,000 unsecured note. In 1946 the bank advised petitioner that it was willing to sell the $100,000 note for $50,000, its then value on the bank's books. The petitioner's husband

accordingly persuaded his half-brother, a Mr. Duval, to purchase the note from the bank for $50,000 with funds furnished by the petitioner and her husband. The Tax Court found that this transaction "was, in essence, a discharge of Mrs. Bradford's indebtedness for $50,000." The petitioner accepts the correctness of that finding, conceding that Duval "purchased the note as agent for the Bradfords and with no intention of enforcing same." The petitioner was solvent both before and after the note was discharged.

Upon these facts the Tax Court concluded that the petitioner had realized unreported ordinary income of $50,000 in 1946 and upheld the Commissioner's determination of deficiency in accordance with that conclusion. 1954, 22 T.C. 1057, 1073. The petitioner asks us to reverse the Tax Court's decision upon two separate grounds: (1) that the cancellation of her $100,000 note for $50,000 was a "gratuitous forgiveness" upon the part of the bank and therefore a gift within the meaning of § 22(b) (3) of the Internal Revenue Code of 1939,[2] and (2) that because she received nothing when the original note was executed by her in 1938, she did not realize income in 1946 when the note was cancelled for less than its face amount, even if the cancellation was not a gift.

The contention that what the petitioner received from the bank was a gift is grounded upon the testimony of the bank's president. He stated that the petitioner's husband had done a great deal of business with the bank, had met all his obligations during the depression, and that the bank looked forward to substantial future business with him. He further testified that although it might have been possible for the bank

---

1. The Tax Court unequivocally found as a fact that petitioner received no consideration when she executed this note. 1954, 22 T.C. 1057, 1066. This finding is not clearly erroneous, and we accept it, despite qualifying language in the Tax Court's subsequent unreported memorandum and order denying petitioner's motion for reconsideration.

2. "§ 22. Gross income * * *
"(b) *Exclusions from gross income.* The following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * *
"(3) *Gifts, bequests, devises, and inheritances.* The value of property acquired by gift, bequest, devise, or inheritance. * * *" 26 U.S.C., 1946 Ed.

to collect the entire face amount of the note, "if I foreclosed on the proposition, put Mrs. Bradford out of her home, taken the furniture and liquidated everything he had, * * * " he considered it to the bank's best interest under the circumstances to forego a lawsuit so long as the bank could get the book value of the note paid. Upon cross-examination he stated explicitly that he considered the transaction a donation or gift by the bank of the $50,000 charged off.

The Tax Court found that the discharge of the note for $50,000 "was not a gift. * * * The bank's motive in selling the note for $50,000 was to liquidate its investment for book value. [The bank] was of the opinion that this was the best price available. Also by selling at this price the bank avoided the realization of taxable income on the recovery of a charged-off debt as well as the difficulties and uncertainties of enforced collection. * * * Also the bank did not wish to alienate petitioner and lose his future business by bringing suit against his wife.

"The instant transaction did not represent the discharge of a $50,000 indebtedness 'for nothing.' * * * We can only interpret the bank president's testimony as meaning that the bank was willing to sell the note at book value, and, if the transaction benefited petitioner, so much the better." 22 T.C. 1057, 1066, 1074.

In Helvering v. American Dental Co., 1943, 318 U.S. 322, 63 S.Ct. 577, 582, 87 L.Ed. 785, the Supreme Court held that even though "the motives leading to the cancellations were those of business or even selfish," a creditor's forgiveness of part of a debt could be a gift to the debtor, if "the forgiveness was gratuitous, a release of something to the debtor for nothing." 318 U.S. at page 331, 63 S.Ct. at page 582. The American Dental Co. doctrine was, however, markedly circumscribed by the Supreme Court's opinion in the later case of Commissioner of Internal Revenue v. Jacobson, 1949, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477, in which the Court stated,

in holding that the cancellation there did not constitute a gift: "The situation in each transaction is a factual one. It turns upon whether the transaction is in fact a transfer of something for the best price available or is a transfer or release of only a part of a claim for cash and of the balance 'for nothing.'" 336 U.S. at page 51, 69 S.Ct. at page 370.

Our attention has been called to only one case decided since the Jacobson decision which has held the forgiveness of a debt to be a gift. Reynolds v. Boos, 8 Cir., 1951, 188 F.2d 322. In all the other decisions to which we have been referred, the courts, applying the factual test of the Jacobson case, have been unable to find an intent by the creditor to release an unpaid balance "for nothing." Denman Tire & Rubber Co. v. Commissioner, 6 Cir., 1951, 192 F.2d 261, 263; Spear Box Co. v. Commissioner, 2 Cir., 1950, 182 F.2d 844, 846; Pacific Magnesium, Inc., v. Westover, 9 Cir., 1950, 183 F.2d 584, affirming D.C.S.D.Cal.1949, 86 F.Supp. 644; Standard Brass & Mfg. Co. v. Commissioner, 5 Cir., 1955, 218 F.2d 352, affirming 20 T.C. 371. We cannot say that the Tax Court's ultimate finding that there was no gift in the present case was clearly erroneous, and we therefore accept it as we must. United States v. United States Gypsum Co., 1948, 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746.

It was the view of the Tax Court that if there was no gift, the discharge of the $100,000 note for $50,000 clearly resulted in ordinary income in the amount of $50,000. 22 T.C. 1057, 1073. The Commissioner in effect adopts that view in his argument here. "It has become well settled," we are told, "that a profit is realized by a debtor whose obligation is extinguished by payment of an amount less than that which is owing, and that such profit constitutes gain which is taxable income within the broad sweep of Section 22(a) of the Internal Revenue Code of 1939."

The statement quoted can be accepted without question as a correct general

proposition of tax law, where the debtor is solvent, where there is no finding of a gift under the American Dental Co. doctrine, and where the cancellation of indebtedness does not constitute a contribution to a corporation's capital. The proposition was first clearly announced by the Supreme Court in United States v. Kirby Lumber Co., 1931, 284 U.S. 1, 52 S.Ct. 4, 76 L.Ed. 131, and has been followed not only in cases where the debtor received full value for his obligation when it was executed, Commissioner of Internal Revenue v. Jacobson, 1949, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477, but also where it was not made to appear what if any value the debtor had originally received. Helvering v. American Chicle Co., 1934, 291 U.S. 426, 54 S.Ct. 460, 78 L.Ed. 891.

■ It is also a well settled general rule that each year's transactions are to be considered separately, without regard to what the net effect of a particular transaction might be if viewed over a period of several years. Burnet v. Sanford & Brooks Co., 1931, 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383.

A mechanical application of these principles would of course support the Tax Court's decision. Looking alone to the year 1946 under the rule of the Sanford & Brooks Co. case, it is obvious that when $100,000 of the petitioner's indebtedness was discharged for $50,000 in that year, she realized a balance sheet improvement of $50,000 which would be taxable as ordinary income under the rule of the Kirby Lumber Co. case.[3] We cannot agree with the Commissioner, however, that these principles are to be applied so mechanically.

■ The fact is that by any realistic standard the petitioner never realized any income at all from the transaction in issue. In 1938 "without receiving any consideration in return," she promised to pay a prior debt of her husband's. In a later year she paid part of that debt for less than its face value. Had she paid $50,000 in 1938 to discharge $100,000 of her husband's indebtedness, the Commissioner could hardly contend that she thereby realized income. Yet the net effect of what she did do was precisely the same. We cannot agree that the transaction resulted in taxable income to her.[4]

The conclusion we have reached is not without authority to support it. In Bowers v. Kerbaugh-Empire Co., 1926, 271 U.S. 170, 46 S.Ct. 449, 451, 70 L.Ed. 886, the corporate taxpayer had borrowed money from a bank in Germany repayable in marks. The marks were immediately converted into dollars, and the money was lost in the performance of construction contracts by a subsidiary company over a period of years. In a subsequent year, the taxpayer repaid the loan with greatly devalued marks. The question for decision was "Whether the difference between the value of marks measured by dollars at the time of payment * * * and the value when the loans were made was income." The Court decided that it was not, saying that "The loss was less than it would have been if marks had not declined in value; but the diminution of loss is not gain, profit, or income." 271 U.S. 170, at page 175, 46 S.Ct. 449, at page 451.

■ The Kerbaugh-Empire Co. case was decided before the Kirby Lumber Co. and Sanford & Brooks Co. decisions. The case has been called "a frequently criticized and not easily understood decision." See Willard Helburn, Inc., v. Commissioner, 1 Cir., 1954, 214 F.2d 815, 819. It is nonetheless a decision

3. See 2 Mertens' Law of Federal Income Taxation (Zimet & Stanley Revision), Sections 11.19–11.22.

4. See Surrey—"The Revenue Act of 1939 and the Income Tax Treatment of Cancellation of Indebtedness," 49 Yale L. Journal 1153 (Esp. pp. 1172–1175) (1940); Darrell—"Discharge of Indebtedness and the Federal Income Tax," 53 Harvard L.R. 977 (Esp. pp. 980–983) (1940); Warren and Sugarman—"Cancellation of Indebtedness and Its Tax Consequences: I," 40 Columbia L.R. 1326 (Esp. pp. 1330–1333) (1940).

which has not been overruled.[5] Whatever validity the Kerbaugh-Empire Co. decision may now have on its own facts, it remains an authority for the proposition that in deciding the income tax effect of cancellation of indebtedness for less than its face amount, a court need not in every case be oblivious to the net effect of the entire transaction. See Dallas Transfer & Terminal Warehouse Co. v. Commissioner, 5 Cir., 1934, 70 F. 2d 95, 96; Transylvania R. Co. v. Commissioner, 4 Cir., 1938, 99 F.2d 69, 72.

Courts have not hesitated in appropriate circumstances to look behind the cancellation of indebtedness in a given calendar year, and in doing so to evaluate in its entirety the transaction out of which the cancellation arose. Thus, it has been consistently held that the partial forgiveness of indebtedness in a given year does not constitute taxable income to the debtor if the actual effect of the entire transaction was simply to reduce the purchase price of property acquired in a prior year. Hirsch v. Commissioner, 7 Cir., 1940, 115 F.2d 656; Allen v. Courts, 5 Cir., 1942, 127 F.2d 127; Helvering v. A. L. Killian Co., 8 Cir., 1942, 128 F.2d 433.

In Commissioner of Internal Revenue v. Rail Joint Co., 2 Cir., 1932, 61 F.2d 751, a corporate taxpayer, after a reappraisal of its assets, distributed a dividend consisting of its own debenture bonds. In a subsequent year the corporation purchased some of these bonds at less than their face amounts, retired them, and credited the difference to surplus. The court rejected the Commissioner's claim that the corporation thereby realized income in the year the bonds were retired. Stripped of superficial distinctions, the Rail Joint Co. case is identical in principle with the present case. In that case, as in this, the taxpayer received nothing of value when the indebtedness was assumed. Although the indebtedness was discharged at less than its face value, the taxpayer was in fact poorer by virtue of the entire transaction. That the reasoning of the Rail Joint Co. case has not lost its vitality is attested by a very recent Tax Court opinion which approved and followed it. Fashion Park, Inc., 1954, 21 T.C. 600. A parity of reasoning requires reversal of the Tax Court's decision in the present case.

Before concluding it should be emphasized that there is not before us on this review the question of the tax liability of petitioner's husband either in 1938 when his indebtedness was assumed by his wife, or in 1946 when it was discharged, nor do we have for decision any question as to the petitioner's gift tax liability. We have decided only that the petitioner herself under the circumstances of this case did not realize $50,000 of unreported income in 1946.

For the reasons stated, the decision of the Tax Court is reversed.

5. The Supreme Court distinguished the Kerbaugh-Empire Co. case in both the Sanford & Brooks Co. opinion, 282 U.S. 359, at page 364, 51 S.Ct. 150, 75 L.Ed. 383, and the Kirby Lumber Co. opinion, 284 U.S. 1, at page 3, 52 S.Ct. 4, 76 L.Ed. 131.