J. C. BRADFORD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70400.   Filed September 16, 1960.

*William Waller, Esq.*, and *Lawrence Dortch, Esq.*, for the petitioner.

*Jack D. Yarbrough, Esq.*, for the respondent.

### OPINION.

DRENNEN, *Judge:*   Respondent determined a deficiency in petitioner's income tax for the year 1946 in the amount of $40,974.62.

The issues raised by the pleadings are: (1) Whether petitioner received ordinary income in the amount of $50,000 in the year 1946 as a result of a transaction in which a $100,000 promissory note signed by his wife was discharged for $50,000; and (2) whether the assessment and collection of a deficiency for the taxable year 1946 is barred by the statute of limitations or is res judicata.

In view of our conclusion on the second issue, it will be unnecessary for us to decide the first issue.

The evidence consisted of a stipulation of facts in which it was agreed that the entire record in the prior cases of J. C. Bradford, Docket No. 35990, and Eleanor A. Bradford, Docket No. 36895, which were reported in *J. C. Bradford*, 22 T.C. 1057, and which involved the liability of petitioner and his wife for tax on the same $50,000 in the same year, 1946, is incorporated by reference in this proceeding.

Petitioner and Eleanor A. Bradford, hereafter referred to as Eleanor, are husband and wife, married in 1926, and reside in Nashville, Tennessee. Petitioner and Eleanor each filed separate, individual income tax returns for the year 1946 with the collector of internal revenue for the district of Tennessee.

On November 15, 1938, petitioner was indebted to the American National Bank, Nashville, Tennessee, in the amount of $305,000, which was evidenced by his promissory notes. On November 25, 1938, at petitioner's request, for his own business reasons, Eleanor signed an interest-bearing, negotiable demand note in the amount of $205,000, payable to the American National Bank, which note was delivered to the bank by petitioner, along with his own notes for $53,000 and $47,000, which were endorsed by Eleanor, whereupon the bank returned to petitioner his own notes totaling $305,000, which were marked paid. The collateral which petitioner had deposited to secure his $305,000 notes was placed on the $205,000 note signed by Eleanor. In 1940, at the bank's request, Eleanor executed two notes to replace the $205,000 note; one in the amount of $105,000, on which all of the collateral was placed, and the other for $100,000, which was unsecured.

In 1943, the bank was required by a bank examiner to write off $50,000 of the $100,000 note executed by Eleanor. In 1946, the bank advised petitioner that it was willing to sell the $100,000 note signed by Eleanor to anyone for $50,000, which was its then book value. Petitioner persuaded his half brother, G. B. Duval, to purchase the note from the bank with funds furnished by petitioner and Eleanor. Duval purchased the note for $50,000 and thereafter made no demand on petitioner or Eleanor for payment of the note. The transaction was, in essence, a discharge of the indebtedness for $50,000. (See Findings of Fact in 22 T.C. 1057.)

Neither petitioner nor Eleanor reported any income from the release of this indebtedness in their separate returns for the year 1946, or paid any tax with respect thereto. In separate notices of deficiency mailed to petitioner and Eleanor on June 28, 1951, respondent for the first time maintained that petitioner realized additional in-

come in the amount of $50,000 for the year 1946 as a result of the transaction in which Eleanor's note for $100,000 was purchased from the bank by Duval for $50,000; and, in the alternative, that Eleanor realized taxable income in the amount of $50,000 as a result of the transaction, if petitioner did not. On the date the notices of deficiency were mailed to petitioner and Eleanor, the statute of limitations for assessment and collection of the deficiencies for 1946 had not expired because of agreements which extended the statute of limitations for 1946 to June 30, 1951.

Petitioner and Eleanor each filed separate petitions with this Court contesting the addition of this income as set forth in the notices of deficiency, in which each alleged that the Commissioner erred in holding that he or she realized taxable income in the amount of $50,000 as a result of this transaction. The proceedings in Docket No. 35990, involving petitioner, and in Docket No. 36895 involving Eleanor, were consolidated for hearing and opinion. On August 18, 1954, this Court filed its opinion, reported in 22 T.C. 1057 as above mentioned, in which it held that the transaction aforesaid did not result in the realization of ordinary income by petitioner but did result in the realization of ordinary income in the amount of $50,000 by Eleanor for the taxable year 1946. This Court entered its separate decision in each docket number on December 28, 1954.

Respondent did not prosecute an appeal of the decision of this Court in Docket No. 35990, J. C. Bradford, and that decision became final on March 28, 1955. The decision of this Court in Docket No. 36895, Eleanor A. Bradford, was appealed by Eleanor to the United States Court of Appeals for the Sixth Circuit. The Court of Appeals reversed the decision of this Court in Eleanor's case and held that Eleanor did not receive additional income in the amount of $50,000 for the taxable year 1946 as a result of the above transaction. *Bradford* v. *Commissioner*, 233 F. 2d 935 (C.A. 6, 1956). On September 20, 1956, this Court entered its decision in Eleanor's case in accordance with the decision of the Court of Appeals.

The notice of deficiency which is the basis of this proceeding was mailed to petitioner on September 16, 1957. In the notice of deficiency, the Commissioner again determined that petitioner realized ordinary income in the amount of $50,000 in the year 1946 as a result of the transaction whereby Duval purchased Eleanor's $100,000 note for $50,000.[1]

---

[1] Also on Sept. 16, 1957, respondent mailed a notice of deficiency for gift tax liability for the year 1938 to Eleanor in which he determined that Eleanor had made a taxable gift of $205,000 to petitioner in 1938. This question is dealt with in a separate opinion of this Court in *Eleanor A. Bradford,* 34 T.C. 1059, decided this day.

Petitioner relies on the statute of limitations and res judicata as a bar to this proceeding. Respondent agrees that the assertion of a deficiency against petitioner for the year 1946 is barred by the statute of limitations and res judicata unless the mitigation provisions of sections 1311–1315, I.R.C. 1954, are applicable to this case. We agree with petitioner that the mitigation provisions of sections 1311–1315 are not applicable here.

The purpose of sections 1311–1315 is to mitigate the effect of the statute of limitations in certain carefully described situations. Respondent, who is invoking this exception to the basic limitation period, has the burden of establishing its application here. *Olin Mathieson Chemical Corp.* v. *United States*, 265 F. 2d 293 (C.A. 7, 1959); *Estate of Mary B. Warburton*, 30 T.C. 34, appealed (C.A. 3), remanded pursuant to stipulation August 18, 1958; *Budd Co.*, 33 T.C. 813.

Section 1311(a) provides:

(a) GENERAL RULE.—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, * * * then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

Section 1311(b) sets forth conditions necessary for the adjustment. Subparagraph (1) permits the adjustment to be made only if the party successful in the "determination" had maintained a position inconsistent with the position taken in the "determination." However, this subparagraph specifically excludes from its application cases described in section 1312(3)(B) and (4). Consequently, the maintenance of an inconsistent position is not a condition necessary for the adjustment in a case described in section 1312(3)(B). Subparagraph (2)(A) of section 1311(b) does apply to a case described in section 1312(3)(B) and reads as follows:

SEC. 1311(b)(2)(A) DETERMINATION DESCRIBED IN SECTION 1312(3)(B).—In the case of a determination described in section 1312(3)(B) (relating to certain exclusions from income), adjustment shall be made under this part only if assessment of a deficiency for the taxable year in which the item is includible or against the related taxpayer was not barred, by any law or rule of law, at the time the Secretary or his delegate first maintained, in a notice of deficiency sent pursuant to section 6212 or before the Tax Court of the United States, that the item described in section 1312(3)(B) should be included in the gross income of the taxpayer for the taxable year to which the determination relates.

Section 1312 sets forth the circumstances under which the adjustment provided in section 1311 is authorized, the pertinent provision being contained in paragraph (3)(B), which reads as follows:

SEC. 1312(3)(B) ITEMS NOT INCLUDED IN INCOME.—The determination requires the exclusion from gross income of an item not included in a return filed by the taxpayer and with respect to which the tax was not paid but which is includible in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer.

Section 1313(a) defines the term "determination," for purposes of this part, as "(1) a decision by the Tax Court or a judgment decree, or other order by any court of competent jurisdiction, which has become final."

Section 1314(b) provides the method of making the adjustment permitted under section 1311, which allows the issuance of a notice of deficiency within 1 year after the date of the determination. All other applicable provisions of sections 1311–1315 have been met if the situation is one to which sections 1311(a) and 1312(3)(B) are applicable.

Respondent claims that the decision of the United States Court of Appeals for the Sixth Circuit, holding that Eleanor did not realize ordinary income as a result of Duval's purchase of her note in the amount of $100,000 for $50,000 in the year 1946, is a determination referred to in section 1311(a) which requires the exclusion from her gross income of an item not included in her return and with respect to which the tax has not been paid but which is includible in the gross income of a related taxpayer, petitioner here, within the meaning of section 1312(3)(B); that on the date of such determination, correction of the effect of the error (the error being the attempted inclusion of this item in Eleanor's gross income) was prevented by operation of law, i.e., the statute of limitations, and a rule of law, i.e., res judicata; therefore, the notice of deficiency in this case, having been issued within 1 year after the decision in Eleanor's case became final, is timely and is not barred by either the statute of limitations or res judicata. In other words, respondent claims that this Court should now reconsider the same issue between the same parties for the same year which it decided against respondent in Docket No. 35990, even though the decision of this Court on that issue became final without appeal in 1955.

The question is not without difficulty because if we assume that the exclusion of this item from Eleanor's income means that the item is includible in petitioner's income, the determination in Eleanor's case would seem to be one described in section 1312(3)(B) and consequently the provisions of section 1311(a) would be applicable. However, the language of the statute is susceptible to various interpretations and to apply the statute in the manner respondent suggests would be contrary to common sense and our concept of the equitable principles toward which the statute was purportedly enacted. We therefore think it is important and proper to examine

the legislative history of these mitigation provisions to determine what Congress intended.

Part II of subchapter Q, chapter 1, subtitle A, of the Internal Revenue Code of 1954, containing sections 1311–1315, is entitled "Mitigation of Effect of Limitations and Other Provisions." These mitigation provisions were first adopted in section 820 of the Revenue Act of 1938, which had substantially the same heading, and this was continued in section 3801 of the 1939 Code. However, the substance of section 1312(3)(B) and section 1311(b)(2)(A) became law under the 1953 Technical Changes Act. Prior thereto the provisions had been dealing exclusively with so-called inconsistent positions. The provisions applicable to the present case are in sections 1312(3)(B) and 1311(b)(2)(A). The legislative history of the earlier provisions must be read with this in mind.

The following is from the Ways and Means Subcommittee Report, January 14, 1938, 75th Cong., 3d Sess., p. 54, discussing section 820 of the Revenue Act of 1938:

The operation of the statute of limitations is the motivating factor in a large part of this litigation. Usually the running of the statute for one of the years involved prevents an adjustment for that year, and the parties therefore feel compelled to litigate the question to obtain a judicial determination fixing the precise year in which the item falls. If the operation of the statute of limitations were modified in such cases in order to permit a satisfactory adjustment for the year as to which it has run, the principal reason for such litigation would disappear. In addition to the existence of such unnecessary litigation, the decisions thereunder often permit taxpayers or the Commissioner to obtain a twofold advantage by assuming in one year a position different from that taken in another year with respect to which the period of limitations has expired, so that adjustment of the tax liability for the earlier year is impossible.

The sole purpose of the statute of limitations is to prevent the litigation of stale claims. Its use to obtain a twofold advantage, whether by double deduction or double taxation, is not in keeping with its fundamental purpose.

Your subcommittee believes that legislation to eliminate the inequities and injustices arising from the operation of the statute of limitations which have been described would be desirable. * * *

The following appears in the report of the Senate Finance Committee, S. Rept. No. 1567, 75th Cong., 3d Sess., p. 49:

In each case, under existing law, an unfair benefit would have been obtained by assuming an inconsistent position and then taking shelter behind the protective barrier of the statute of limitations. Such resort to the statute of limitations is a plain misuse of its fundamental purpose. The purpose of the statute of limitations to prevent the litigation of stale claims is fully recognized and approved. But it was never intended to sanction active exploitation, by the beneficiary of the statutory bar, of opportunities only open to him if he assumes a position diametrically opposed to that taken prior to the running of the statute. The Federal courts in many somewhat similar tax cases have sought to prevent inequitable results by applying principles variously desig-

nated as estoppel, quasi-estoppel, recoupment and set-off. For various reasons, mostly technical, these judicial efforts cannot extend to all problems of this type. Nor can they provide a uniform, systematic solution of these problems. Legislation has long been needed to supplement the equitable principles applied by the courts and to check the growing volume of litigation by taking the profit out of inconsistency, whether exhibited by taxpayers or revenue officials and whether fortuitous or the result of design.

The legislation here proposed is based upon the following principles:

(1) To preserve unimpaired the essential function of the statute of limitations, corrective adjustments should (a) never modify the application of the statute except when the party or parties in whose favor it applies shall have justified such modification by active inconsistency, and (b) under no circumstances affect the tax save with respect to the influence of the particular items involved in the adjustment.

(2) Subject to the foregoing principles, disputes as to the year in which income or deductions belong, or as to the person who should have the tax burden of income or the tax benefit of deductions, should never result in a double tax or a double reduction of tax, or an inequitable avoidance of tax.

Conference Report, H. Rept. No. 2330, 75th Cong., 3d Sess., states at page 57:

This amendment provides for mitigation of some of the inequities under the income-tax laws caused by the statute of limitation and other provisions which now prevent equitable adjustment of various income tax hardships. * * *

The prior provisions of section 3801(b) of the 1939 Code were amended by the Technical Changes Act of 1953 to include provisions similar to those contained in section 1312(3)(B) of the 1954 Code. The exact statutory language of section 1311(b)(1) appeared for the first time in the 1954 Code.[2] H. Rept. No. 894, 83d Cong., 1st Sess., p. 9, on the Technical Changes Act of 1953, contains the following:

Section 3801 of the code allows either the taxpayer or the Commissioner to correct an improper tax result in certain cases where such action would otherwise be prevented by the running of the statute of limitations. This is possible by reason of the allowance under that section of an additional period of time beyond the period of limitations which would ordinarily be applicable. One of the principles of the present statute is to preclude any adjustment unless the hardship results from the maintenance of an inconsistent position by either the taxpayer or the Commissioner.

The statute operates effectively in cases to which it is directed, but your committee realizes that tax inequities, the correction of which is prevented by the running of the period of limitations, may exist without regard to whether or not the position maintained by either party is inconsistent. A taxpayer may be disallowed a deduction or credit to which he is entitled in another taxable year or to which a related taxpayer may be entitled. Similarly, the Commissioner may have included an item in income for a taxable year different from the year for which such item should have been included, or the Commissioner may have included the item in the income of a related taxpayer.

---

[2] But see section 3801(b) of the 1939 Code, as amended by section 211(b)(2) of the Technical Changes Act of 1953; and H. Rept. No. 1337, 83d Cong., 2d Sess., p. A291, which says that section 1311 "corresponds, in part, to section 3801(b) of the 1939 Code."

Under present law, the errors described may not be corrected if discovered after the expiration of the period of limitations in respect to the correct year of the taxpayer or of the proper taxpayer. Your committee's bill includes provisions amending section 3801 in order to open the statute of limitations in such cases. * * *

The above quotations from the legislative history of the provisions here applicable indicate an intention on the part of Congress to cover only situations which included some mitigating circumstances to justify disregard of the statute of limitations. Here none appear. This is not a claim of the Commissioner, the litigation of which was prevented by the statute of limitations. The "error," if any, in this case was not discovered by the Commissioner "after the expiration of the period of limitations." He litigated this claim against this taxpayer in the Tax Court before the statute of limitations had run. Nor was there here any "exploitation" of the statute of limitations or any dilatory action on the part of petitioner to justify any modification of the statute of limitations. There is no equitable principle to aid the Commissioner.

Although neither petitioner nor Eleanor reported this item, nevertheless, the Commissioner included it in income of each one by his notice of deficiency issued prior to the expiration of the period of limitations on assessment and collection, and he had his day in court on each of those determinations. His determination with respect to petitioner was reversed in the Tax Court, but the Court sustained his determination with respect to Eleanor. Eleanor took an appeal in her case and won in the Court of Appeals for the Sixth Circuit. The Commissioner could have carried petitioner's case to that same court along with Eleanor's and thus protected himself fully without the need of any aid from sections 1311–1315 of the 1954 Code. Sections 1312(3)(B) and 1311(b)(2)(A) were not intended to allow the Commissioner under such circumstances to go back and relitigate the alleged liability of petitioner for tax on this very same item.

Being convinced that section 1312(3)(B) was not intended to apply to a situation such as here involved, we examine the language of the section to determine whether it requires a different conclusion. We do not think it does.

Section 1312 relates the circumstances under which the adjustment provided in section 1311 is authorized. Subsection (3)(B) permits the adjustment where the—

determination requires the exclusion from gross income of an item not included in a return filed by the taxpayer and with respect to which the tax was not paid but which is includible in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer.

The "determination" of the Court of Appeals in Eleanor's case required the exclusion of this item from Eleanor's income for the year

1946 but not on the ground that it was properly includible in petitioner's gross income for 1946 or any other year. The Court of Appeals held that looking to the net effect of the entire transaction from Eleanor's standpoint, Eleanor did not realize income from the transaction in 1946. The court specifically noted that the question of petitioner's tax liability for either 1938 or 1946 was not before it for review. We recognize that to make section 1312(3)(B) applicable here the "determination" in Eleanor's case need not hold affirmatively that the item of income held to be erroneously included in Eleanor's income was properly includible in petitioner's income, because petitioner was not before the court which made the determination. Nevertheless, sections 1311(a) and 1312(3)(B) read together contemplate the correction of an error resulting from the inclusion or exclusion of an item from the wrong taxpayer's income. Here there is no such error. This Court has already held that the item was not income to petitioner in 1946. The appellate court held that it was not income to Eleanor in 1946. There is no resulting error which justifies modification of the statute of limitations to correct.

In our opinion the statute contemplates mitigation of the statute of limitations or a rule of law to correct errors induced by the party relying thereon or by a related party, which errors could be corrected except for the bar of the statute or rule of law. But in our opinion it does not contemplate retrial of issues which have been tried and finally decided before the statute of limitations has run.

We hold that sections 1311–1315 are not applicable to this proceeding and the assessment and collection of the deficiency determined by respondent is barred by the statute of limitations.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

OPPER, *J.*, dissents.

*William Waller, Esq.,* and *Lawrence Dortch, Esq.,* for the petitioner.

*Jack D. Yarbrough, Esq.,* for the respondent.

