T.C. Memo. 2007-75

UNITED STATES TAX COURT

GILBERT HAHN, JR. AND MARGOT H. HAHN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23756-04.                    Filed April 2, 2007.

<u>George B. Delta</u> and <u>Stuart H. Gary</u>, for petitioner Gilbert
Hahn, Jr.

<u>Mary M. Baker</u>, <u>Matthew S. Campbell</u>, <u>James R. Hagerty</u>, and
<u>Haig V. Kalbian</u>, for petitioner Margot H. Hahn.

<u>Cleve Lisecki</u>, <u>Veena Luthra</u>, and <u>Lindsey D. Stellwagen</u>, for
respondent.

MEMORANDUM OPINION

WELLS, <u>Judge</u>:  The instant matter is before the Court on
petitioner Gilbert Hahn, Jr.'s Motion for Partial Summary

Judgment.[1]  The issue for decision concerns discharge of
indebtedness income pursuant to section 61(a)(12).  For the
reasons stated below, we shall deny petitioner's motion.  Unless
otherwise indicated, all Rule references are to the Tax Court
Rules of Practice and Procedure, and all section references are
to the Internal Revenue Code, as amended.

### Background

Petitioners resided in Washington, D.C., when the petition
was filed.  References to petitioner in the singular are to
Gilbert Hahn, Jr.

During 1986, petitioner obtained a $1 million line of credit
from the National Bank of Washington (the bank), which was later
increased to $2 million.  During June 1988, petitioner borrowed
against the line of credit and gave the bank a promissory note in
the amount of $2 million (the note).  The note provides, inter
alia:  (1) The outstanding principal and interest shall be
payable on demand; (2) until demand is made, petitioner shall pay
interest quarterly on the unpaid principal balance at the bank's
floating prime rate plus ½ percent; (3) in the event of a late
payment, petitioner shall pay a late charge of 2 percent per

---

[1] Petitioner and his wife, Margot Hahn, filed a joint 1995
Federal income tax return and a joint petition with the Court.
Petitioner Margot Hahn now seeks relief from joint and several
liability pursuant to sec. 6015, and each petitioner has retained
separate counsel.  Petitioner Margot Hahn did not join petitioner
Gilbert Hahn, Jr. in making the instant motion.

annum in excess of the aforementioned interest rate; and (4) in the event petitioner defaults and the bank institutes a suit to collect on the note, the bank shall be entitled to recover as attorney's fees 15 percent of the unpaid principal and interest, and costs of suit.

During August 1990, the Office of the Comptroller of the Currency declared the bank insolvent and appointed the Federal Deposit Insurance Corporation (FDIC) as its receiver. The FDIC later claimed that petitioner had defaulted under the terms and conditions of the note by failing to repay principal and interest.

During January 1994, the FDIC filed suit against petitioner in U.S. District Court. The FDIC complaint alleged that petitioner owed the following amounts with respect to the note: (1) $1,752,384 in principal; (2) $381,934 in prejudgment interest accrued as of February 15, 1993, with interest continuing to accrue at a daily rate of $312 until paid; (3) a late charge of 2 percent per annum on the unpaid principal; and (4) attorney's fees in the amount of 15 percent of the unpaid balance of the loan.[2] The complaint alleged that, except for a $25,000 payment by petitioner in November 1993, none of the above-described amounts had been paid. The complaint also sought costs of suit.

---

[2] All amounts are rounded to the nearest dollar.

Petitioner disputed the FDIC's claim, and, during October 1995, petitioner and the FDIC entered into a settlement agreement in which petitioner agreed to pay an additional $975,000 in exchange for a release of the FDIC's claims against him. The settlement agreement states in part that petitioner "denies the entire claim" and that petitioner and the FDIC were settling the dispute to "avoid the time and cost of litigation".

During November 1995, petitioner paid the FDIC the $975,000 specified in the settlement agreement. The FDIC then issued petitioner a Form 1099-C, Cancellation of Debt, indicating that petitioner had received $1,512,193 of income from discharge of indebtedness. Petitioner contacted the FDIC to dispute the issuance of the Form 1099-C, but the FDIC refused to rescind or amend the information return.

On their joint 1995 Federal income tax return, petitioners did not report the $1,512,193 as income. Additionally, petitioners claimed a $999,090 deduction on Schedule C, Profit or Loss From Business, for horse breeding and training activity. The $999,090 represents the $975,000 payment to the FDIC and $24,090 of legal fees reportedly paid in connection with the settlement. Taking into account the deduction claimed on Schedule C, petitioners reported adjusted gross income of $460,898.

Respondent issued petitioners a notice of deficiency for 1995 determining, inter alia, that the $1,512,193 was forgiveness of indebtedness income and therefore taxable. Respondent also disallowed the claimed Schedule C deduction for $999,090 and determined an accuracy-related penalty pursuant to section 6662(a). Petitioners filed a timely petition for review with the Court, and respondent filed an answer.

During October 2005, respondent contacted the FDIC. In response to respondent's inquiry, the FDIC indicated that the $1,512,193 reported on the Form 1099-C reflected only the amount of loan principal that was forgiven;[3] as part of the settlement agreement, the FDIC also had forgiven amounts owed for interest, late charges, attorney's fees, and other costs that were not reflected in the Form 1099-C. (For convenience, we refer to the interest, late charges, attorney's fees, and other costs as the related items.) Respondent filed an amendment to answer seeking to increase the deficiency to include forgiveness of indebtedness income attributable to the related items.

---

[3] Respondent contends that the $1,512,193 figure was calculated as follows: The FDIC first applied the $975,000 payment toward accrued interest of $734,809. The balance of $240,191 was then applied to reduce the outstanding principal from $1,752,384 to $1,512,193. This latter figure, according to respondent, represents the amount shown on the Form 1099-C, Cancellation of Debt. The settlement agreement does not specify how the $975,000 was allocated, however, and for purposes of the instant motion we do not decide if respondent's calculation is correct.

During November 2006, petitioner filed a Motion for Partial Summary Judgment.  The motion states that petitioner's gross income does not include any amounts attributable to the related items.[4]  Respondent opposes the motion.

## Discussion

Summary judgment is appropriate with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment.  Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985).

Petitioner advances two arguments in support of his motion. Petitioner's first contention is that because he did not receive cash or other property when he allegedly became obligated for the related items, he was not enriched by the forgiveness of the

_____

[4] Petitioner also contends that he did not realize discharge of indebtedness income with respect to the principal amount of the loan; however, petitioner does not seek summary judgment with respect to that amount.

obligation.  Secondly, petitioner argues in the alternative that payment of the related items would have given rise to a deduction as ordinary and necessary business expenses of his horse breeding and training activity.

I.    Whether forgiveness of the related items could give rise to
      discharge of indebtedness income

Section 61(a)(12) provides that gross income includes income from the discharge of indebtedness.  The amount of income includable generally is the difference between the face value of the debt and the amount paid in satisfaction of the debt.  Babin v. Commissioner, 23 F.3d 1032, 1034 (6th Cir. 1994), affg. T.C. Memo. 1992-673.  The underlying rationale for such inclusion is that, to the extent a taxpayer is released from indebtedness, the taxpayer realizes an accession to income due to the freeing of assets previously offset by the liability.  See United States v. Kirby Lumber Co., 284 U.S. 1, 3 (1931); Jelle v. Commissioner, 116 T.C. 63, 67 (2001).

Petitioner contends that the Kirby Lumber Co. rationale does not apply to the related items because he did not receive cash or other property when he incurred a liability for such items. Petitioner argues that the forgiveness of the obligation therefore did not result in a freeing of assets.  We disagree.

A taxpayer may realize income upon the discharge of an obligation even though the taxpayer has not directly received cash or other property.  In Old Colony Trust Co. v. Commissioner,

279 U.S. 716 (1929), for example, an employer paid an employee's State and Federal income tax liabilities. The payment constituted income because "The discharge by a third person of an obligation to * * * [a taxpayer] is equivalent to receipt by the person taxed." Id. at 729. In Harris v. Commissioner, T.C. Memo. 1975-125, affd. without published opinion 554 F.2d 1068 (9th Cir. 1977), discharge of indebtedness income included loan principal as well as interest, taxes, penalties, and trustee and attorney's fees. In Jelle v. Commissioner, supra, discharge of indebtedness income included interest on a mortgage that was partially forgiven. See also Earnshaw v. Commissioner, T.C. Memo. 2002-191 (discharge of indebtedness income included a cash advance fee posted to the taxpayer's account), affd. 150 Fed. Appx. 745 (10th Cir. 2005); Seay v. Commissioner, T.C. Memo. 1974-305 (taxpayer realized discharge of indebtedness income although he never received cash).

We also disagree with petitioner's contention that he "received no payment of cash, property, or anything else of value when he allegedly became liable for the [related items]." The right to use money represents a valuable property interest. Fed. Home Loan Mortgage Corp. v. Commissioner, 121 T.C. 254, 259 (2003). When viewed most favorably to respondent, the facts indicate that petitioner had use of the borrowed funds beyond the

time specified in the note. Consequently, petitioner incurred a liability for the related items. When petitioner was released from the liability, he realized an accession to income due to the freeing of assets previously offset by the liability. See Jelle v. Commissioner, supra at 67.

Petitioner nevertheless urges a contrary result, relying primarily on Commissioner v. Rail Joint Co., 61 F.2d 751 (2d Cir. 1932), affg. 22 B.T.A. 1277 (1931); Fashion Park, Inc. v. Commissioner, 21 T.C. 600 (1954); and Bradford v. Commissioner, 233 F.2d 935 (6th Cir. 1956), revg. 22 T.C. 1057 (1954). Those cases are distinguishable.

Rail Joint Co. and Fashion Park, Inc. each involved a corporate taxpayer that had issued bonds and later repurchased them for less than par (i.e., face) value. The Commissioner determined that each taxpayer had realized discharge of indebtedness income equal to the difference between the repurchase price of the bonds and their par value. Commissioner v. Rail Joint Co., supra at 751; Fashion Park, Inc. v. Commissioner, supra at 600.

The court in each case held that the taxpayer had not realized income. In Commissioner v. Rail Joint Co., supra at 752, the Court of Appeals for the Second Circuit reasoned that the taxpayer "never received any increment to its assets * * * at the time * * * [the bonds] were retired." In Fashion Park, Inc.

v. Commissioner, supra at 606 (citation omitted), this Court held that "if * * * [a taxpayer] has received upon issuance of its bonds an amount less than it paid for their retirement it has no accession in assets but is in fact poorer by the transaction".

Petitioner contends that he did not realize discharge of indebtedness because, like the taxpayers in Rail Joint Co. and Fashion Park, Inc., he "did not wind up with anything more than what [he] had prior to the [transaction]."  Petitioner fails to appreciate the holdings of those cases.

Rail Joint Co. and Fashion Park, Inc. were decided after the Supreme Court's decision in United States v. Kirby Lumber Co., supra.  In Kirby Lumber Co., a taxpayer issued bonds in the amount of $12,126,800 for which it received par value; i.e., the issue price and par value were the same.  The taxpayer later repurchased the bonds for less than par value.  The Supreme Court held that the difference between the repurchase price and the par value was income.  Id. at 2-3.

The taxpayers in Rail Joint Co. and Fashion Park, Inc., in contrast, did not receive par value for the bonds they issued. The face value of the bonds exceeded the amount the taxpayers received when the bonds were issued.[5]  Because each taxpayer

---

[5] In Commissioner v. Rail Joint Co., 61 F.2d 751 (2d Cir. 1932), affg. 22 B.T.A. 1277 (1931), the taxpayer distributed the bonds to its shareholders as a dividend and, therefore, received no proceeds in return.  In Fashion Park, Inc. v. Commissioner, 21

(continued...)

later repurchased its bonds for an amount <u>greater</u> than the issue price, the taxpayers did not realize income and were, in fact, poorer by the transaction.  In <u>Fashion Park, Inc.</u>, this Court rejected the Commissioner's argument that the holdings of <u>Rail Joint Co.</u> and <u>Fashion Park, Inc.</u> conflicted with <u>Kirby Lumber Co.</u>, noting that "'We have consistently * * * emphasized the issue price rather than par value in computing gain from the discharge of obligations.'"  <u>Fashion Park, Inc. v. Commissioner, supra</u> at 606 (quoting <u>Kramon Dev. Co. v. Commissioner</u>, 3 T.C. 342, 349 (1944)); see also <u>Rail Joint Co. v. Commissioner, supra</u> at 752.  The holdings in <u>Rail Joint Co.</u> and <u>Fashion Park, Inc.</u> are consistent with section 1.61-12(c)(3), Income Tax Regs., which provides:  "If bonds are issued by a corporation and are subsequently repurchased by the corporation at a price which is exceeded by the issue price * * *, the amount of such excess is income for the taxable year."

In the instant case, petitioner did not issue bonds or other debt instruments at a discount.  Accordingly, cases such as <u>Rail Joint Co.</u> and <u>Fashion Park, Inc.</u> are inapposite.

The third case on which petitioner relies, <u>Bradford v. Commissioner, supra</u>, is also distinguishable.  In <u>Bradford</u>, the

---

[5](...continued)
T.C. 600 (1954), the taxpayer originally issued $50 par preferred stock for $5 a share.  In a tax-free reorganization, the company later issued $50 par value bonds in an exchange for the preferred stock.  <u>Id.</u> at 601-603.

taxpayer's husband had executed a note in favor of a bank.  At the husband's request in 1938, the taxpayer substituted her own $100,000 note for a portion of the indebtedness without receiving any compensation in return.  Id. at 936.  In 1943, the bank wrote off $50,000 of the note.  In 1946, a relative purchased the note for $50,000 with funds provided by the taxpayer and her husband, and the note was retired.  Id.  The Commissioner determined that the wife had realized $50,000 of discharge of indebtedness income in 1946.  Id.

The Court of Appeals for the Sixth Circuit held that the taxpayer had not realized income.  The court stated that while a "mechanical application" of tax law would support the Commissioner's determination, the court "need not * * * be oblivious to the net effect of the entire transaction".  Id. at 938-939.  The court concluded that "by any realistic standard the * * * [taxpayer] never realized any income at all from the transaction".  Id. at 938.  The court also concluded that "Stripped of superficial distinctions, the Rail Joint Co. case is identical in principle with the present case."  Id. at 939.

We note that Bradford did not involve a debt instrument issued for less than par value.  Additionally, Bradford involved unusual facts, suggesting that it is of limited application.  For example, the court did not address whether the taxpayer's husband had realized discharge of indebtedness income because his tax

liability was not at issue.[6]  Bradford v. Commissioner, 233 F.2d
at 939.  Furthermore, in a later case, the Court of Appeals for
the Sixth Circuit questioned whether discharge of indebtedness
income might have been realized in an earlier year.  Tenn. Sec.,
Inc. v. Commissioner, 674 F.2d 570, 574 (6th Cir. 1982) ("Viewing
the Bradfords as an economic unit might perhaps raise questions
of income to them collectively upon the bank's discounting the
note."), affg. T.C. Memo. 1978-434.  We also note that
petitioner, unlike the taxpayer in Bradford, applied the loan
proceeds to obligations of his own.  Accordingly, we believe that
Bradford is inapposite.

For the foregoing reasons, we conclude that petitioner may
have realized discharge of indebtedness income from the
forgiveness of the related items.  Accordingly, petitioner's
first argument fails.

II.  Whether payment of the related items would be deductible as
     ordinary and necessary business expenses

Petitioner's second argument is that the payment of the
related items would have given rise to a deduction as ordinary

---

[6] After the Court of Appeals for the Sixth Circuit issued
its opinion, the Commissioner determined a deficiency against the
taxpayer's husband arising from the same transaction.  See
Bradford v. Commissioner, 34 T.C. 1051 (1960).  The notice of
deficiency was untimely due to the expiration of the applicable
limitations period for assessment, however, and we entered a
decision for the taxpayer's husband on that ground.  Id. at 1059.
Thus, neither the Court of Appeals nor this Court addressed
whether the taxpayer's husband had realized discharge of
indebtedness income.

and necessary business expenses of his horse breeding and training activity. Accordingly, he argues, any amounts attributable to the related items do not constitute income.

Section 108(e)(2) provides: "No income shall be realized from the discharge of indebtedness to the extent that payment of the liability would have given rise to a deduction." In general, a taxpayer may deduct ordinary and necessary expenses paid or incurred in carrying on any trade or business. Sec. 162(a); see also Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352 (1971); FMR Corp. & Subs. v. Commissioner, 110 T.C. 402, 414 (1998).

Petitioner asserts that he was in the trade or business of breeding and training horses from 1983 until sometime in 1995. Petitioner contends that he used most of the funds he borrowed from the bank to finance the horse breeding activity. Petitioner provided his own affidavit and the affidavit of his accountant, Elliot Blum, to support his contention. Accordingly, petitioner argues that the payment of the related items would have given rise to a deduction under section 162(a) as ordinary and necessary business expenses.

Respondent contends that petitioner has not established that he used the borrowed funds for the horse breeding activity. Respondent provided letters that petitioner wrote to the bank in 1988 and 1989 indicating that petitioner borrowed against his

line of credit to finance real estate purchases and to pay income taxes, insurance premiums, and other bills. In a letter dated May 25, 1989, for example, petitioner requested that the bank place $770,000 into his checking account, stating that "The purpose of this loan is the payment of income taxes."

Respondent further contends that, even if the borrowed funds were used in the horse breeding activity, petitioner has not established that the activity was a trade or business. Respondent served petitioner with a request for production of documents pursuant to Rule 72(a)(1) asking petitioner to "provide all documents establishing that the training/breeding of horses was an activity undertaken for profit." Respondent asserts that petitioner has not provided the requested information.

Petitioner counters that he conducted the horse breeding activity in a businesslike manner, including keeping accurate books and records and using professional advisers to assist him. Although petitioner acknowledges that the activity generated "considerable" losses in prior years, he contends that respondent never disallowed the losses.

Viewing the facts most favorably to respondent, we conclude there remains a genuine issue as to whether petitioner used the borrowed funds in a trade or business. The affidavits of petitioner and his accountant each assert that "most" of the borrowed funds were used in the horse breeding activity.

Petitioner's letters to the bank, however, leave some unanswered questions regarding those assertions.

We also are unable to conclude, for the purpose of the instant motion, that the horse breeding activity was a trade or business. To be engaged in a trade or business within the meaning of section 162, "the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). We generally consider nine nonexclusive factors in deciding whether a taxpayer has maintained the requisite profit motive. Dreicer v. Commissioner, 78 T.C. 642, 644 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(b), Income Tax Regs.

If petitioner is correct that he conducted the activity in a businesslike manner and used expert advisers, such factors would tend to indicate a profit motive. Sec. 1.183-2(b)(1) and (2), Income Tax Regs. However, the activity's history of losses and petitioner's financial status are factors that weigh against petitioner. Sec. 1.183-2(b)(6), (8), Income Tax Regs. Additionally, there are several remaining factors that are not addressed in the pleadings and other materials submitted by the parties.

We also note that respondent's failure to disallow losses from the activity in prior years does not establish that it was a trade or business in 1995. Each taxable year stands on its own,

and the Commissioner may challenge in a succeeding year what was overlooked in previous years.  See, e.g., <u>Rose v. Commissioner</u>, 55 T.C. 28, 31-32 (1970); <u>Blodgett v. Commissioner</u>, T.C. Memo. 2003-212, affd. 394 F.3d 1030 (8th Cir. 2005).  Because material facts remain in dispute, we conclude that the issue of whether petitioner was engaged in a trade or business is inappropriate for summary judgment.  See <u>Dahlstrom v. Commissioner</u>, 85 T.C. at 821.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.